Filed 8/19/25  P. v. Peredia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SERGIO PEREDIA,<br><br>    Defendant and Respondent. | D085186<br><br><br>(Super. Ct. No. FVI025720) |

APPEAL from an order of the Superior Court of San Bernardino County, Albert Hsueh, Judge.  Affirmed.

Jason Anderson, San Bernardino County District Attorney and Robert P. Brown, Assistant District Attorney for Plaintiff and Appellant.

Gregory D. Totten for California District Attorneys Association; Thien Ho, Sacramento County District Attorney and David R. Boyd, Deputy District Attorney as Amicus Curiae on behalf of Plaintiff and Appellant.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Respondent.

The San Bernardino County District Attorney appeals an order granting respondent Sergio Peredia's petition for recall and resentencing under Penal Code section 1170, subdivision (d)(1)(A).[1]  The statute provides relief to juvenile offenders who were sentenced to imprisonment for life without the possibility of parole (LWOP).  (§ 1170, subd. (d)(1)(A).)  Peredia was sentenced to prison for an aggregate term of 50 years to life for a murder he committed as a juvenile.  Peredia in his petition relied on this court's decision in *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*) and argued that the fact he was entitled to relief under the Youthful Offender Act (section 3051)—which entitled him to a youth parole offender hearing in his 25th year of incarceration—did not impact his eligibility for relief under section 1170, subdivision (d)(1)(A).[2]

The District Attorney contends Peredia's sentence is not a de facto LWOP; the trial court impermissibly extended *Heard*; and we should reconsider our decision in *Heard*.

The California District Attorneys Association and the Sacramento County District Attorney filed an amicus brief arguing, "[Peredia's] sentence already provides numerous opportunities for youth offender parole, elder parole, and the opportunity to accrue good conduct credits.  [He] therefore already received what the Legislature intended [section 3051] to provide."

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Section 3051 requires the Board of Parole Hearings to conduct a "youth offender parole hearing" at specified times during the incarceration of certain youthful offenders.  (See § 3051, subds. (a)(1), (b).)  As relevant to this case, juvenile offenders sentenced to explicit LWOP terms are eligible for parole during their 25th year of incarceration.  (§ 3051, subd. (b)(4).)

2

Amici also contend *Heard, supra,* 83 Cal.App.5th 608 was wrongly decided. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2006, when Peredia was 16 years old, he murdered Erik Bermudez. We summarize the facts from our prior opinion. (*People v. Peredia* (July 15, 2011, D057745) [nonpub. opn.].) Two brothers testified at trial that in October 2006, Peredia came to their house driving the victim's vehicle, which had expensive rims and stereo: "Peredia claimed he 'blasted' someone for rims and a stereo. He asked for a shovel, rope, and a gas can, which the [ ] brothers gave to him. The four then drove to a gas station and filled the gas can. They then drove to Sanchez Ranch. On the way to Sanchez Ranch, Peredia again explained he had killed someone and needed help to dispose the body. Peredia said that a drug buy went bad, and he panicked and shot Bermudez in the head and heart. When they arrived at Sanchez Ranch, the [ ] brothers saw a body stripped of its clothing with bullet holes in the head and chest. They dragged the body into the car and drove off the road into the desert. Peredia stopped, dug a hole, dragged the body into the hole, poured gasoline on it, and set it afire before burying it. Peredia then drove the brothers back to their home and showed them the gun he had used. [¶] A pathologist conducted an autopsy. Bermudez had been shot twice, once in the chest and once in the head. The chest shot was not fatal. The fatal shot was to the head, and the bullet entered near the right eye and exited near the left ear." (*People v. Peredia, supra,* D057745.) Peredia was arrested and incarcerated shortly afterwards. (*Ibid.*)

A jury convicted Peredia of first degree murder (§ 187, subd. (a)), and found true an allegation he had personally used a firearm to kill the victim.

3

(§ 12022.53, subd. (d).)  In 2010, the court sentenced Peredia to a total term of 50 years to life.  (*People v. Peredia, supra,* D057745 [nonpub. opn.].)

In July 2024, Peredia petitioned for recall and resentencing under section 1170, subdivision (d)(1)(A) and in reliance on this court's opinion in *Heard, supra,* 83 Cal.App.5th 608.  He alleged he had been incarcerated for at least 15 years as required by the statute.  The People opposed the motion, arguing *Heard* does not apply to this case, and Peredia was not sentenced to the functional equivalent of LWOP.

The trial court granted Peredia's petition to recall his sentence, but permitted the People to appeal before proceeding to resentencing.

## DISCUSSION

The District Attorney contends the trial court erred by regarding Peredia's 50-year-to-life sentence as "a bright-line as to what might be considered de facto LWOP."  He distinguishes *Heard, supra,* 83 Cal.App.5th 608 and other cases that have followed it (like *People v. Sorto* (2024) 104 Cal.App.5th 435, 440 (*Sorto*) [juvenile was sentenced to 10 years plus 130 years to life]), as involving lengthy sentences that clearly extended beyond the life expectancy of nearly every human being.  The District Attorney argues that, by contrast, Peredia's sentence "was less than half these sentences.  Even assuming, arguendo, no parole opportunity existed for him under section 3051, and no additional credits were available to him . . . [Peredia] would still be eligible for parole no later than age 66."

The District Attorney acknowledges the California Supreme Court has held that a 50-year-to-life sentence is the functional equivalent of an LWOP term (*People v. Contreras* (2018) 4 Cal.5th 349, 369 (*Contreras*)), but distinguishes that case as having been decided under the Eighth Amendment's cruel and unusual punishment provision.

4

A.  *Standard of Review and Applicable Law*

Whether Peredia's sentence constitutes the functional equivalent of an LWOP involves interpreting section 1170, subdivision (d)(1)(A).  Statutory interpretation and the application of undisputed facts to a statute are questions of law we review de novo.  (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311.)

Section 1170, subdivision (d)(1)(A) provides:  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."  Section 1170, subdivision (d)(1)(A) thus applies, by its own terms, to those juvenile offenders sentenced to "imprisonment for life without the possibility of parole."

In *Heard,* the defendant had been sentenced as a minor to a term of 23 years plus 80 years to life for two counts of attempted murder and one count of voluntary manslaughter.  (*Heard, supra,* 83 Cal.App.5th at pp. 613-614.)  The trial court denied his petition for recall and resentencing, finding him statutorily ineligible because section 1170, subdivision (d)(1)(A) only applies to defendants sentenced to an explicitly designated LWOP term.  (*Heard,* at p. 622.)  The defendant appealed, asserting section 1170, subdivision (d)(1)(A) should be interpreted to apply to juvenile offenders sentenced to de facto LWOP because a contrary interpretation of the statute violates equal protection of the laws.

A panel of this court concluded Heard was similarly situated for purposes of section 1170, subdivision (d)(1)(A), with those juvenile offenders who are eligible to petition for resentencing.  (*Heard, supra,* 83 Cal.App.5th

5

at pp. 626-627.) This court rejected the idea that Heard's eligibility for a youth offender parole hearing under section 3051 undermined the conclusion that his sentence constituted a de facto life without parole sentence, such that he is not similarly situated with the juvenile offenders to whom the resentencing provision applies. (*Id*. at p. 628.) This court concluded that the statutory resentencing provision "uses the phrase '*was sentenced*' and refers to the past." (*Heard,* at pp. 628-629.) We explained, "At the time Heard was sentenced, section 3051 had not yet been enacted, and he was required to serve his determinate term plus the full minimum period of confinement of each of his life sentences before becoming parole eligible. [Citations.] Put another way, Heard would have to serve 103 years before becoming parole eligible. Such a sentence constitutes a de facto life without parole sentence." (*Heard, supra,* 83 Cal.App.5th at p. 629.) "As a consequence, denying Heard the opportunity to petition for resentencing under this provision violates his right to equal protection of the laws." (*Id.* at pp. 633-634.)

The court in *Sorto* followed the reasoning in *Heard, supra,* 83 Cal.App.5th 608 and held that "juvenile offenders sentenced to functionally equivalent LWOP terms are entitled to section 1170[, subdivision] (d) relief under the constitutional guarantee of equal protection" and "parole eligibility under section 3051 does not render those offenders ineligible for relief under section 1170[, subdivision] (d)." (*Sorto, supra,* 104 Cal.App.5th at p. 440.)

The California Supreme Court subsequently decided *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*) and changed the way to analyze equal protection claims: "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated

6

for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Id.* at pp. 850-851.)

The court in *Hardin* considered whether section 3051's exclusion of young adult offenders sentenced to life without parole violates the Fourteenth Amendment's equal protection guarantee. (*Hardin, supra,* 15 Cal.5th at pp. 838-839.) The defendant in *Hardin* specifically challenged the life without parole exclusion as it applied to young adult offenders convicted of first degree special circumstance murder. (*Id.* at p. 847.) The court's analysis was therefore largely concerned with whether the Legislature had a rational basis to distinguish between young adults convicted of first degree murder with and without special circumstances. (See *id.* at pp. 859-863.) The court found there was a rational basis for the exclusion. (*Id.* at p. 840.)

In *People v. Williams* (2024) 17 Cal.5th 99, the California Supreme Court considered an equal protection challenge to section 3051's exclusion of youth offenders sentenced under the "One Strike" law. The defendant argued there was no rational basis to exclude One Strike nonhomicide offenders, while including youth offenders convicted of murder without special circumstances. (*Id.* at p. 121.) The court found a rational basis existed for the Legislature to distinguish between One Strike youth offenders and other youth offenders. (*Id.* at pp. 130-131.)

In *People v. Bagsby* (2024) 106 Cal.App.5th 1040 (*Bagsby*), another panel of this court reaffirmed *Heard, supra,* 83 Cal.App.5th 608 when considering a juvenile homicide offender's sentence of 107 years to life. (*Bagsby, supra,* at p. 1045**.**) The District Attorney claimed there was "ample reason for this court to reconsider its ruling in *Heard*" because it "does not

square with the Supreme Court's approach to a similar issue in *Hardin*[, *supra,* 15 Cal.5th 834]." We disagreed, holding the issue forfeited, but agreeing with *Sorto, supra,* 104 Cal.App.5th 435 that *Heard* and *Hardin* were consistent in any event: "In short, the People's argument based on *Hardin* does not provide us with a compelling reason for overturning *Heard.*" (*Bagsby*, at p. 1060.)

In *People v. Munoz* (2025) 110 Cal.App.5th 499, review granted June 25, 2025, S290828 (*Munoz*), the court considered the same issue presented here. The defendant, a juvenile homicide offender sentenced to 50 years to life, asserted his sentence was a de facto sentence of life without parole, and he was therefore entitled to section 1170, subdivision (d) relief. (*Munoz,* at pp. 502-503.) A majority of the court concluded that sentence was not the functional equivalent of life without parole. (*Id.* at p. 503.)

The *Munoz* majority distinguished *Heard*, *Sorto*, *Bagsby*, and *People v. Mendez* (2010) 188 Cal.App.4th 47, because those cases "involved sentences with minimum parole eligibility dates much greater than 50 years. . . . Munoz's sentence is quantitatively different from the sentences in those cases." (*Munoz, supra,* 110 Cal.App.5th at pp. 507-508, review granted.) Further, "Munoz will be 65 years old when he becomes eligible for parole (putting aside any hearing he may receive under [section] 3051) and will have a realistic opportunity to obtain release from prison during his expected lifetime." (*Id.* at p. 508.)

The *Munoz* majority further determined *Contreras, supra,* 4 Cal.5th 349 did not require a different result, noting the *Contreras* defendants were not homicide offenders, "which was an integral part of the Supreme Court's analysis." (*Munoz, supra,* 110 Cal.App.5th at p. 510, review granted.) It also

8

reasoned that *Contreras* considered only whether the sentences violated the Eighth Amendment.

In contrast, the *Munoz* dissent concluded the reasoning of *Contreras, supra,* 4 Cal.5th 349 "must inform" the decision of whether a 50-years-to-life sentence is the functional equivalent of life without parole for equal protection purposes, since section 1170, subdivision (d) "was enacted in response to the principles articulated in *Graham v. Florida* (2010) 560 U.S. 48, 82 . . .—the decision at the heart of *Contreras*." (*Munoz, supra,* 110 Cal.App.5th at p. 513, review granted (dis. opn. of Feuer, J.).) The dissent relied on statistics cited by Munoz regarding the average age of death of California inmates, and the higher mortality risk of children who suffer multiple adverse experiences, to conclude that a sentence of 50 years to life imposed on a 15 or 16 year old "is the functional equivalent of an LWOP sentence because a substantial percentage of juvenile offenders will die in prison or be released at the end of their lifetimes, without a meaningful opportunity to become productive members of society." (*Id.* at p. 517, fn. omitted.)

The dissent found it not plausible that the Legislature "intended to limit resentencing relief to juvenile offenders who commit the most heinous crimes and would with certainty otherwise die in prison, and not to the substantial fraction of juvenile offenders sentenced to 50 years to life who also will die before they are eligible for release, or the fraction of juvenile offenders who, after serving most of their lifetimes in prison, will have no realistic opportunity to reintegrate into society or be incentivized to become responsible individuals." (*Munoz, supra,* 110 Cal.App.5th at p. 522, review granted (dis. opn. of Feuer, J.).)

During the pendency of this appeal, the California Attorney General, although not a party to this case, has conceded that under *Contreras, supra,* 4 Cal.5th 349, a 50-year-to-life sentence is the functional equivalent of LWOP. Therefore, a defendant who received the same sentence should be entitled to seek resentencing relief under section 1170, subdivision (d)(1). (*People v. Thompson* (2025) 112 Cal.App.5th 1058, 1062 (*Thompson*) [Attorney General "concedes that a juvenile offender's sentence of 50 years to life is the functional equivalent of life without parole. [He] further concedes that denying relief to that category of juvenile offenders violates equal protection guarantees"].) Based on the Attorney General's concession, the court in *People v. Cabrera* (2025) 111 Cal.App.5th 650 observed that under *Heard, supra*, 83 Cal.App.5th, "the Attorney General concedes the trial court erred in ruling that defendant's eligibility for a youthful offender parole hearing under section 3051 precluded defendant from seeking relief under section 1170[, subdivision] (d)(1)(A)." (*Cabrera*, at p. 653.) *Cabrera* "agree[d] with *Heard*'s holding that section 3051 eligibility does not defeat a defendant's section 1170[, subdivision] (d)(1)(A) petition." (*Cabrera,* at p. 653.)

The court in *Thompson* did not accept the Attorney General's concession. (*Thompson, supra,* 112 Cal.App.5th 2025, at p. 1063.) It reasoned: "Neither *Heard*, nor this court in *Sorto*, applied the reasoning of *Contreras* to the equal protection challenges presented in those cases. We agree with the *Munoz* court that the *Contreras* notion of functional equivalence does not answer the questions of eligibility for section 1170[, subdivision] (d) relief presented here." (*Thompson*, at p. 1072.) The *Thompson* court added, "[W]e understand the *Hardin* and *Williams* courts to have meant what they said: Eighth Amendment concerns do not *necessarily* establish an equal protection violation, and an equal protection specific

10

analysis is therefore necessary." (*Thompson*, at p. 1073.) The court concluded the defendant had failed to show there was no rational basis for the legislature to treat juvenile offenders sentenced to 50 years to life differently from juvenile offenders sentenced to life without parole. It posited, "At the time of enactment, the Legislature could reasonably consider life without parole to be the most severe and unjust punishment imposed on juvenile offenders. While both life without parole and 50-years-to-life sentences are now deemed unconstitutionally excessive punishment when imposed on juvenile offenders, the Legislature could rationally conclude that providing the relatively small number of juvenile offenders otherwise certain to die in prison an opportunity to obtain a lesser sentence was the most pressing priority." (*Id.* at p. 1077.)

B. *Analysis*

As indicated, the Courts of Appeal are divided on the question of whether a 50-years-to-life sentence for a juvenile who committed a homicide is the functional equivalent of LWOP. They have emphasized different considerations to support their respective views, with some relying more on Eighth Amendment considerations, and others on equal protection principles.

This is the second time that the District Attorney has requested this court to reconsider its decision in *Heard, supra,* 83 Cal.App.5th 608 and conclude it was improperly decided. In the prior case, *Bagsby*, *supra,* 106 Cal.App.5th 1040, this court stated its reasons why *Heard* was correctly decided. We adopt that reasoning here, and because the issues raised in the present appeal are identical to those raised in *Bagsby*, we see no reason to repeat ourselves.

At bottom, the District Attorney is requesting that we ignore the California Supreme Court's determination in *Contreras, supra,* 4 Cal.5th 349,

11

that a 50-year-to-life sentence is the functional equivalent of an LWOP term. In *Cabrera, supra,* 111 Cal.App.5th 650, a 15-year-old juvenile was convicted of first degree murder and sentenced to 50 years to life. The trial court denied resentencing relief under section 1170, subdivision (d)(1)(A). The Court of Appeal reversed, relying on the California Supreme Court's decision in *Contreras*. Justice Hoffstadt stated in his concurrence: "Were the slate clean, I would defer to our Legislature's decision as to where to draw the line between entitlement and non-entitlement to relief under [ ] section 1170, subdivision (d)(1)(A)—at least in a case, like this one, where the question presented is whether there is a rational basis to distinguish a sentence of 50 years to life from an LWOP sentence. However, our Supreme Court's holding in [*Contreras*] that 'a sentence of 50 years to life is functionally equivalent to LWOP" is, in my view, inescapable and indistinguishable.' " (*Cabrera, supra,* at p. 654 (conc. opn. of Hoffstadt, J.).) We agree.

12

## DISPOSITION

The order granting Sergio Peredia's section 1170, subdivision (d)(1)(A) petition is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DATO, J.

KELETY, J.